IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


UNITED STATES OF AMERICA

v.                                              CASE NO. 4:02-cr-00043-SPM-AK

JEFFREY SCOTT SMITH,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 66, Motion to Vacate under 28 U.S.C. § 2255, by Jeffrey Scott Smith. The Government has filed its response, Doc. 72, and Defendant has filed a reply. Doc. 75. Defendant has also filed an amended memorandum and second supplemental brief raising *Blakely* and *Booker* issues. Docs. 74 & 76. The Court is also now in possession of Defendant's original memorandum. Doc. 83; *see also* Doc. 82. In reviewing the matter, the Court determined that an evidentiary hearing was necessary on three allegations of ineffective assistance of trial and appellate counsel, namely, Issues 2, 3, and 5. The Court appointed counsel to represent Defendant, and a lengthy evidentiary hearing was held. At the conclusion of the hearing, the Court heard oral argument from counsel, and the court reporter has filed a transcript of the proceedings. Doc. 98. This cause is therefore now in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

**BACKGROUND**

Defendant was charged by Superceding Indictment with possession of firearms by a prior convicted felon and possession of various controlled substances.  Doc. 14.  In support of the firearms charge, the Superseding Indictment listed the following prior felony convictions:  (1) a 1990 Florida conviction for possession of cocaine and methamphetamine; (2) a 1996 Florida conviction for possession of methamphetamine; (3) 1998 Florida convictions for grand theft motor vehicle and leaving accident scene with injuries; (4) a 1998 Florida conviction for grand theft auto; (5) a 1999 South Carolina conviction for possession of a stolen vehicle; (6) a 1999 South Carolina conviction for possession with intent to distribute crank/methamphetamine; and (7) 2000 Florida convictions for forgery, grand theft, and possession of methamphetamine.  *Id*. Immediately after the Superseding Indictment was filed, the Government filed an Information and Notice of Intent to Use Prior Convictions to Enhance Sentence pursuant to 21 U.S.C. § 851. Doc. 17.   All of the listed convictions were drug related.  *Id*.

The case proceeded to trial.  Initially, the parties stipulated that "prior to June 5th, 2002, the defendant, Jeffrey Scott Smith, had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense...."  Doc. 51 at 49-50.

During its case in chief, the Government produced testimony that established that Defendant had actual, physical possession of the firearms and that the guns belonged to Defendant.  *Id*. at 73-74 & 107-08.  The Government did not call a fingerprint expert but advised the Court and Defendant that if the expert  were to testify, she would have testified that while there were no latent fingerprints on the guns, "it's not uncommon not to find fingerprints on firearms" as "sometimes it's difficult to lift fingerprints off of firearms."  *Id*. at 84-85.

*Case No: 4:02cr00043SPM-AK*

Following the Government's case in chief, defense counsel announced Defendant's intention to take the stand in his own defense. *Id*. at 121. The Government then requested that it be allowed to impeach Defendant with the specifics of each conviction pursuant to Fed. R. Evid. 609. *Id*. That motion was denied, but the Court did allow the Government "to ask [Defendant] whether he's been convicted of each of these as set forth in the indictment. If he answers truthfully, the questioning must cease." *Id*. at 125-26.

During his testimony, Defendant stated that although he told the investigating deputy that he had bought one of the subject guns for his son and that the other gun belonged to a friend, he really had never seen the guns before they were left in the road by the woman who had given him a ride. *Id*. at 141 & 143. On cross-examination, Defendant admitted that even though he "didn't want to have nothing to do with them," he "had direct physical control of those guns" when he moved the gun case from the road in a laundry basket and "kicked it with [his] foot up against the wall." *Id*. at 155 & 158. Defendant later said, "I wouldn't call it knowing, direct physical control of [the guns]. I was trying to get rid of them as best I could." *Id*. at 167.

In closing, counsel for the Government focused "most of [his] closing argument on Mr. Smith's testimony and particularly on his cross-examination, because...pretty much everything he said squares with what [prosecution witnesses] said." *Id*. at 180. The jury subsequently convicted Defendant on both counts. Doc. 30. Defense counsel then moved for judgment of acquittal or new trial. Doc. 33. As grounds, counsel argued:

> The evidence supporting the conviction on count I consisted of testimony concerning the movement of the firearms from the dirt road in front of a residence to the front porch of the residence.
>
> There was also testimony from Mr. Smith that he realized the gun case contained

firearms as he was carrying them from the road to the residence.

A defendant cannot be convicted of the knowing and willful possession of an object if that possession was by mistake or accident.

*Id*.

In response, the Government pointed to other portions of the trial testimony "that proved beyond any doubt that [Defendant] knowingly and willfully possessed the firearms in question." Doc. 34.  In support of this position, the Government directed the Court to testimony from Vivian Bass that Defendant "held up" the gun case to her and "asked her if he could leave the guns there at her home for a few years" and that Defendant told her that "one of the firearms in the gun case was for his son to use for hunting, and that the other one belonged to a friend."  *Id*. It also highlighted testimony from law enforcement "that the defendant acknowledged possession of the guns by stating that one was a rifle he planned to give to his son for hunting while the other one belonged to a friend of his...."  *Id*.  According to the Government, Defendant's brief exhibition of the guns to Ms. Bass with his stated intent to retrieve the firearms at some later date was sufficient for possession.  *Id*.

Citing not only Defendant's testimony but also the testimony of Ms. Bass and the sheriff's deputies, the Court denied the motion, concluding that "the evidence adduced at trial was sufficient to support the jury's conclusion that the Defendant knowingly possessed a firearm in violation of Section 922(g)" and that because the evidence presented supports the verdict, "a miscarriage of justice would not occur by allowing the verdict to stand."  Doc. 38.  In the letter trial counsel sent to Defendant enclosing a copy of the order, counsel indicated that he would "use this as one of the points in your appeal after you are sentenced."  Doc. 66, Ex. D.

In the Presentence Report, the Probation Officer calculated Defendant's base offense level at 24 because Defendant had previously been convicted of one felony crime of violence, fleeing to elude law enforcement at high speed, and one felony drug offense, possession with intent to distribute crank.  Presentence Report at 6.  At sentencing, defense counsel conceded that the PSR was correct on this point, as counsel's "research into fleeing at high speed to elude a police officer is that the State of Florida considers that it is a violent crime."  Doc. 53 at 3.  He then requested that the Court "consider sentencing Mr. Smith at the 120-month range," which was the bottom of the Guidelines range.  *Id.*

In response, the Government stated its opinion that "in this instance the bottom end of the range is not appropriate for this defendant based on the testimony that we had at trial."  *Id.* at 5. More specifically, the Government pointed to Defendant's "statements at the time he was arrested regarding the drugs and the firearms" which "were completely opposite of his statements from the witness stand...."  *Id.* at 6.  In short, in the Government's view, Defendant testified "falsely under oath...."  *Id.* at 7.

In reply, Defendant's counsel argued that he did not "think that the court can just look at the different stories and determine that Mr. Smith was lying in court before the jury and everything else he has said is the truth" and asked that the Court "not penalize him because there are different versions to the story."  *Id.* at 8.  Defendant then directly addressed the Court, stating, "I would appreciate the bottom of guidelines, but I'm going to accept whatever you put down on me."  *Id.* at 9.

The Court sentenced Defendant to 120 months on the firearms charge and 36 months on the drug charge, to run concurrently.  *Id.* at 9-10.  He also ordered Defendant immediately to pay

a $5,000 fine on the drug charge, "as required by statute." *Id*. at 10.  Defendant's attorney

objected to the fine since Defendant did "not have the financial wherewithal to have the ability to

pay a court-imposed fine."  *Id*. at 11.  The Government took no position on the fine, but the

Probation Officer stated:  "Mr. Smith's previous employment provided him with income of 800

to a thousand dollars a month in a business owned by his father.  It would appear that he has an

opportunity to return to that employment and that would give him sufficient funds to pay the

fine." *Id*. at 12.  The Court overruled Defendant's objection. *Id*.

Defendant appealed but, as the Eleventh Circuit noted," he did not "challenge his

conviction or length of incarceration" but only the Court's "imposition of a $5,000 fine."  Doc.

62.  According to the Court,

> At sentencing, Smith objected to the imposition of the $5,000 fine based on his
> financial inability to pay the court-imposed fine.  On appeal, Smith admits that he
> is not challenging the district court's ruling on his 'ability to pay a fine.'  Rather,
> Smith argues on appeal that:  (1) [the drug statute] gives the district court the
> discretion to waive the fine; and (2) the district court erroneously believed it
> lacked the authority to waive the fine....

*Id*.  Because Defendant did not raise this issue at the district court level, the appellate court

reviewed only for plain error.  *Id*.  After considering the matter, the Eleventh Circuit found:

> [W]e readily conclude that the $5,000 fine was warranted.  We further conclude
> that, under the plain error standard of review, the district court's discussion with
> the probation officer demonstrated the district court's recognition that it had the
> authority to waive the fine if Defendant Smith was unable to pay.

*Id*.

The instant motion to vacate ensued.  Doc. 66.  On this occasion, Defendant raises six

claims of ineffective assistance of trial and appellate counsel:  (1) trial counsel failed to object to

the use of a prior conviction "without first putting [Defendant] on notice"; (2) trial counsel

improperly insisted that Defendant "take the stand to testify in his own behalf against his wishes" and "without properly instructing [him] on making self-incriminating statements"; (3) appellate counsel failed to "review the record as to the trial court's denial of [the] motion for acquittal after trial counsel preserved the issue to be raised in direct [appeal]"; (4) trial counsel failed to "respond that [Defendant] does not have the ability to pay a fine"; (5) trial counsel failed to prepare a defense for trial, improperly placed Defendant on the stand against his wishes, and informed him that "this was his only defense"; and (6) trial counsel failed to object at sentencing regarding the Court's failure to "make a factual determination as to the two point enhancement regarding the stolen firearm." *Id.* Each claim will be considered in turn.

## **DISCUSSION**

Because all of Defendant's claims involve allegations that his counsel, both trial and appellate, were ineffective, a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate as an initial matter.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id.* at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v.*

*White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at 689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions."  *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy."  *Chandler*, 218 F.3d at 1315 n.16.  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]."  *Id*.  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id.*

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

A.      Trial counsel failed to object to the use of prior conviction without notice.

According to Defendant's reply,[1] his sentence was improperly enhanced based on his prior conviction for fleeing to elude, and the Notice of Enhancement was facially defective. Doc. 75 at 3.  In Defendant's view, counsel was ineffective for failing to investigate these matters.  *Id*. at 5.

Before sentencing, the Probation Officer originally calculated Petitioner's base offense level at Level 24 based on prior convictions for drug possession with intent to distribute and for carrying a concealed weapon.  PSR at 26-27.  Though Defendant's initial objections to the PSR were not filed, Defendant apparently timely objected to the officer's conclusion that carrying a concealed weapon was a felony.  *See* Doc. 40.

Sentencing was originally scheduled for February 18, 2003, but was continued on Defendant's motion.  Docs. 36 & 37.  On April 8, 2003, the Government filed its own objections to the PSR and a response to Defendant's previously submitted objections.  Doc. 39.  On that occasion, the Government agreed that carrying a concealed weapon was not a felony but argued that fleeing to elude high speed was a qualifying violent felony.  *Id*.  Defendant objected to the Government's objections as untimely pursuant to Fed. R. Crim. P. 32, Doc. 40, but the officer agreed with the Government's position and concluded that Defendant's prior conviction for fleeing to elude high speed was a felony crime of violence.  Though he revised the basis for the

---

[1] The Government indicates that Defendant's arguments on this claim appear at pages 1-4 of his § 2255 motion.  The Court cannot discern any elaboration of this claim in either Defendant's motion to vacate or his memorandum in support thereof.  Docs. 66 & 83.  Frankly, the Court is puzzled.  It therefore turns to Defendant's reply for the necessary specifics regarding this claim since, to all appearances, Defendant's other filings are devoid of any details about this allegation.

base offense calculation, the base offense level remained at Level 24 pursuant to § 2K2.1(a)(2)

of the Sentencing Guidelines.  PSR at 26-27 & 6.

According to the PSR, the conviction for fleeing to elude high speed arose as follows:

On August 19, 1997, authorities stopped Jeffery Scott Smith at the Campbell Causeway in Tampa, Florida, for expired registrations on two personal water crafts.  When Smith was unable to produce a registration for the water crafts, the officer began to write a warning ticket and asked Smith for his driver's license.  Smith stated that his driver's license was in his truck at which point he walked to the vehicle to get it.  When the defendant reached his vehicle, he got into the vehicle and fled the area.  A chase ensued through downtown Tampa ending with Smith crashing his vehicle in the back of a van stopped at a red light.  A search of the vehicle revealed a .22 caliber pistol, a glass marijuana smoking pipe and a nine inch knife.  Further check revealed that the two personal water crafts in Smith's possession had been stolen.

PSR at 11.  Defendant was represented by counsel and was sentenced to three years probation.

*Id*.  His probation was later revoked, and he was sentenced to 364 days imprisonment.  *Id*.

As previously noted, at sentencing, counsel for Defendant conceded that his research

"into fleeing at high speed to elude a police officer is that the State of Florida considers that it is

a violent crime," and thus, in his view, the probation officer's calculations were correct.  Doc. 53

at 3.

For convictions for unlawful receipt, possession, or transportation of firearms or

ammunition and other prohibited transactions involving firearms or ammunition, the base

offense level is 24 "if the defendant committed any part of the instant offense subsequent to

sustaining at least two felony convictions of either a crime of violence or a controlled substance

offense...."  U.S. Sentencing Guidelines Manual § 2K2.1(a)(2) (2002).  As used in this

subsection, the definition of a "crime of violence" is governed by § 4B1.2(a) and Application

Note 1 of the Commentary to § 4B1.2(a).  *Id*. at § 2K2.1, cmt. n.5.  Section 4B1.2 defines the

term "crime of violence" as follows:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
>
> (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id*. at 4B1.2(a).  "Crime of violence" includes

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.  Other offense are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (<u>i.e.</u>, expressly charged) in the count of which the defendant was convicted involved use of explosives...or, by its nature, presented a serious potential risk of physical injury to another.
>
> "Crime of violence" does not include the offense of unlawful possession of a firearm by a felon.  Where the instant offense of conviction is the unlawful possession of a firearm by a felon, § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition) provides an increase in offense level if the defendant had one or more prior felony convictions for a crime of violence or controlled substance offense....

*Id*. at 4B1.2(a), cmt. n.1.

Defendant was convicted in state court of violating Section 316.1935 of the Florida

Statutes, which provides in pertinent part:

> Any person who willfully flees or attempts to elude a law enforcement officer...and during the course of the fleeing or attempted eluding:
>
> (a) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, commits a felony of the second degree, punishable as provided in § 775.082....

Fla. Stat. Ann. § 316.1935(3)(a).  The punishment for a violation of this statute is a "term of imprisonment not exceeding 15 years."  Fla. Stat. Ann. § 775.082.

Defendant's actions–fleeing from police through downtown Tampa and crashing into another vehicle that was stopped at a red light–absolutely constitutes "a wanton disregard for the safety of persons or property," *id.*, and thus, "conduct [which], by its nature, presented a serious potential risk of physical injury to another."  U.S.S.G. Manual at § 4B1.2(a), cmt. n.1.  Indeed, in a case of first impression, the Eleventh Circuit has conclusively determined that "felony fleeing and eluding, in violation of Fla. Stat. § 316.1935(3), is a 'crime of violence' for purposes of the career-offender enhancement...."  *United States v. Orisnord*, 2007 WL 1062529, at *11 (11th Cir. Apr. 11, 2007).  Counsel was therefore not ineffective in conceding that Defendant's conviction for fleeing to elude high speed met the definition of "crime of violence," and the Court cannot fathom how any additional amount of investigation would have changed that conclusion.  Unlike an enhancement under § 851, which does require advance notice before the enhancement can be effected, there is no similar requirement for a Guidelines enhancement.  Even if counsel had advanced an opposite position, there is not a reasonable probability that the outcome of the proceeding would have been different.  While there was no case law on point in the Eleventh Circuit at the time of Defendant's sentencing, the plain language of the Guidelines, when read in conjunction with the criminal statute for fleeing to at high speed to elude a police officer, makes it clear that Defendant's prior conviction for fleeing to elude met the criteria for the enhancement under the Guidelines.

As to Defendant's argument that the Notice of Intent was facially defective,  it is meritless.  A § 851 notice goes only to establish prior drug convictions for an enhanced sentence

under 21 U.S.C. § 844; convictions for other offenses are not relevant.  The Notice of Intent filed

by the Government was timely, *see* 21 U.S.C. § 851(a)(1) (notice must be filed before trial), and

listed four prior drug convictions, more than enough to meet the requirements for the enhanced

sentence under § 844.[2]  Counsel was therefore not ineffective for failing to challenge the validity

of the § 851 notice.

      B.      Trial counsel improperly insisted that Defendant take the stand against his wishes
            and without properly instructing him.

In his reply, Defendant maintains that while counsel "did not stick a gun to [his] head to

make him testify," he nevertheless felt coerced into testifying when counsel told him that he had

no defense if he did not take the stand.  Doc. 75 at 9.  He also argues that counsel was ineffective

when he failed to inform Defendant: (1)  "that if he takes the stand to testify he could possibly

self-incriminate himself," and  (2) "that a direct answer would in fact support a conviction" or

"provide a link in the chain of evidence which would lead to a conviction."  *Id*. at 8.

In response, the Government maintains that Defendant's allegations "cannot be

believed."  Doc. 72 at 8.  In support of its response, the Government has submitted trial

counsel's letter affidavit,[3] in which counsel maintains:

> When the time for trial came, I went over with Mr. Smith what I expected the
> government's case to be, the witnesses, the evidence, and explained to him, that
> without his testimony, the jury would only have one story to consider.  That
> would be the government's.  I do not recall that he was enthusiastic about
> testifying but he really didn't have an option.

---

[2]Indeed, two of the drug convictions were over five years old, and thus, not challengeable as a matter of law.  21 U.S.C. § 844(e).

[3]The letter affidavit is neither sworn, notarized, nor otherwise signed under penalty of perjury.  Doc. 72, Attach.

It is not my practice to "make" a defendant testify should they not want to or "not allow" them to testify should they wish to. That is their choice. I advise them, as I did here, that without their testimony there's not much doubt in what the verdict will be.

I do not recall any specific discussions concerning "taking the 5th." If Mr. Smith had asked me if he had a right to invoke his 5th Amendment rights on the witness stand, I would have advised him that the government would have a right to question him about any statements he made and he would not have a right to refuse to answer. Mr. Smith also was aware of the risk he was taking by testifying, inasmuch as the prosecutor would attempt to make any statements made by him incriminating. There was not much we could do, as Mr. Smith's position was that he had inadvertently carried the firearms from the road to the porch, not realizing what they were.

Mr. Smith has complained in the past that I made him testify. I have previously written to him that, as we discussed many times, without his testimony, he had no defense. The only story the jury would have heard would be the prosecutor's witnesses. I thought he did a very credible job testifying on his own behalf. The prosecutor tried to have Judge Mickle penalize him, at sentencing, for lying on the stand, but Judge Mickle would not do so, in part, I believe, due to Mr. Smith's credibility on the stand.

Never did I advise Mr. Smith that he had to testify in his own behalf, nor did I do anything to prevent him from pleading guilty, if that was his choice.

*Id*. at Attach.

Because the Government essentially conceded that the Court would be required to make a credibility determination on this issue, the Court ordered an evidentiary hearing. At the hearing, Defendant, who was represented by court-appointed counsel, testified that early on in trial preparations, counsel questioned him regarding how he felt about testifying, to which Defendant responded, "I don't feel good about it, I said I really don't want to. And he said, Well...the way it looks without your testimony you have no defense." Doc. 98 at 5. Defendant based his decision on his knowledge that "the prior [criminal] record comes into play when you testify," and he did not want "the jury to be prejudiced against me." *Id*. at 6. In particular, Defendant

*Case No: 4:02cr00043SPM-AK*

wanted to keep his prior drug convictions from the jury.  *Id*.  According to Defendant, his

defense to the charges was "that I never touched the guns, physical, knowingly and I didn't have

no idea about constructive possession at that time, *id*. at 8, and that he "didn't know there was

guns...in the laundry basket until I picked it up and took in on the porch."  *Id*. at 12.

Defendant admitted that counsel was able to locate the driver of the vehicle who took

Defendant to the Basses' house but that he determined "she wouldn't be a very good witness"

because "she said that the drugs we did and everything else, the things we were doing, she said

she couldn't believe that she got away with her life after seeing all that."  *Id*. at 14-15.  Counsel

advised Defendant that this witness was "totally against anything that had to do with me.  And he

said there was nothing that she could say that would help me."  *Id*. at 15.  Defendant therefore

concurred with counsel's conclusion.  *Id*. at 15-16.

Defendant further stated that he was hesitant to take the stand because the "story...of the

girl and me getting in an argument, it was so...far out in left field the way it sounded, I didn't

think it sounded good....And I just didn't want to tell that story."  *Id*. at 16-17.  Defendant

maintained that by taking the stand he was "forced to admit...that [he] had actually taken

physical possession of those firearms....and [that he] had moved them from one place to

another...."  *Id*. at 18.

On cross-examination, Defendant admitted that counsel never threatened him to take the

stand and that Mr. Clark "left the decision up to me...."  *Id*. at 50-51.  As Defendant explained,

the decision to take the stand was his "[b]ased on what my attorney told me."  *Id*. at 51.

Trial counsel, William Clark, testified that Defendant wanted to go to trial because he

"thought he had a defense in the case about how he came to be in possession of those firearms.

*Case No: 4:02cr00043SPM-AK*

And that was his decision was to see if we could get a not guilty verdict from the jury." *Id*. at 107-08.  Mr. Clark stated that he told Defendant, "Without his testimony, as a result of having no witnesses to call for him...then we had no defense other than what the government was going to put on." *Id*. at 110.  More specifically, he recalled telling Defendant that if he chose not to testify "it would be my suggestion...to plead guilty and get acceptance of responsibility and reduce the amount of time he was going to spend [in prison]." *Id*.  In counsel's view, based on his experience, if the Government "put [the] firearms in [Defendant's] possession, then [the jury was] going to find him guilty" if "the only story that [the] jury heard was...what the government's story was...." *Id*. at 111.  Clark acknowledged that Defendant "was reluctant to take the stand," and although he "didn't force [Defendant] to take the stand," he did tell him "that if he didn't testify there wasn't any way we were going to be able to get his side of the story to the jury."  *Id*. at 117.

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225 (1971).  "A criminal defendant clearly cannot be compelled to testify by defense counsel who believes it would be in the defendant's best interest to take the stand."  *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992).

> The decision whether a criminal defendant should take the witness stand in his own trial unquestionably has tremendous strategic importance.  Nevertheless, the mere fact that such a decision involves trial strategy does not itself mandate that the decision ultimately rests with defense counsel....Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.

*Id*. at 1532-33.  One "good tactical reason[ ] why it may not be best for the defendant to testify" is "if the defendant might provide evidence of missing elements of the crime on cross-examination...."  *Id*. at 1533 n.9.  The question of whether counsel has violated his client's right to testify–or not to testify, as in this case–is analyzed under *Strickland*.  *Id*. at 1534.

Even without Defendant's testimony, the jury was going to be fully apprised of his prior drug convictions simply by reading the Indictment, which was part of the record, and thus, his concern that taking the stand and admitting to the prior convictions would prejudice the jury was misplaced.  Further, while Defendant did indeed admit his actual, physical control over the firearms during his own testimony, this fact had already been established by Ms. Bass' testimony that Defendant held the gun case up, saying (1) that "'I'm going to leave these guns here for a little while,'" and (2) that "he was going to give [one of the guns] to his son for a hunting rifle." Doc. 51 at 73-74.  Thus, Defendant did not, as he suggested at the hearing, provide the evidence necessary for his own conviction or otherwise fill in the blanks of the Government's case against

him.  *See* Doc. 98 at 19.  It is perfectly clear that if Defendant had not taken the stand, he would not have had any defense whatsoever to the possession charge after Ms. Bass and the deputies placed the guns in his hands, albeit while enclosed in a gun case, with an expressed intention to exercise dominion and control over them.  The best he could do was to take the stand and explain the circumstances of how he came to have the guns and how he divested himself of them as soon as he realized he had them.  While the Court always instructs a jury not to take a defendant's decision not to take the stand as an admission of any sort, the truth is in this case without Defendant personally advancing some other version of the events at hand--something beyond what the Government had offered--for the jury to consider and discuss, there was not even the slightest possibility of an acquittal.  Defendant's suggestion at the hearing that perhaps Mr. Clark could have launched a defense through cross-examination is untenable, as the Court cannot fathom what questions counsel could have asked that could have more accurately portrayed the defense than Defendant's own testimony.  Indeed, even at the evidentiary hearing, Defendant continued to advance the position he took at trial and to dispute Ms. Bass' recollections, which highlights the basis for counsel's opinion that without Defendant's testimony, there would be no disputed facts or credibility determinations for jury resolution. *See*, *e.g.*, *id*. at 57-58.

    Therefore, having heard the testimony of the witnesses and having assessed their demeanor and credibility, the Court concludes that Defendant's decision to testify was his own and was made knowingly and voluntarily after full consultation with his attorney who did not coerce him into testifying but instead counseled him as any reasonable attorney would have

under the circumstances as they existed at the time.

      C.     Appellate counsel failed to review the trial record and to appeal on grounds asserted in the motion for judgment of acquittal.

In his reply, Defendant argues that appellate counsel rendered ineffective assistance of counsel when she failed to raise on appeal the ground which trial counsel had raised in the motion for judgment of acquittal or new trial.  Doc. 75 at 11; *see also* Doc. 33.  As previously noted, after trial, counsel had argued that there was insufficient evidence to support the conviction on Count One, as Defendant did not possess the gun knowingly and willfully but rather, mistakenly or accidentally.  On appeal, appellate counsel raised only the issue of the $5,000.00 fine and did not address the sufficiency of the evidence.

Defendant's appellate counsel was Gwendolyn Spivey, an appellate attorney with almost thirty years of experience.  According to her testimony at the evidentiary hearing, she reviewed Defendant's file, including the sufficiency of the evidence issue, and determined that in light of the law and the facts, the fine issue was the only viable issue for appeal.  Doc. 98 at 81.  She explained this decision in a contemporaneously written letter to Defendant, which was admitted at the hearing as G-3.[4]  At the hearing, she elaborated that the sufficiency of the evidence issue was meritless not only because Defendant's trial testimony supported the finding of possession but also because once Defendant took the stand, an insufficiency of the evidence argument was "dead in the water" for appellate purposes because under Eleventh Circuit precedent, the jury

---

    [4]It is very probable that if the Government had submitted this letter to the Court when it filed its response to the § 2255 motion, an evidentiary hearing on this claim of ineffectiveness would not have been necessary, as the letter fully explains the bases for counsel's decision, which, even on paper, appear reasonable and considered.

*Case No: 4:02cr00043SPM-AK*

was entitled to "conclude that the opposite of what the defendant testified is true." *Id.* at 80; *see also United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (statement made by testifying defendant, if disbelieved by jury, may be considered as substantive evidence of defendant's guilt). Furthermore, according to Ms. Spivey, the fact that trial counsel preserved the sufficiency of the evidence issue is not determinative of the issues finally pursued on appeal. As she explained, "It's counsel's job on appeal to decide which issues, among those that are preserved and those that are not preserved, to appeal. It's a strategic decision which ones to raise on appeal." Doc. 98 at 98-99.

Counsel clearly made a tactical decision not to pursue issues on appeal which she determined were meritless, and having carefully considered the matter, the Court believes her decision in this regard was reasonable. Because Defendant has failed to prove that no competent counsel would have taken the action that Ms. Spivey took, he has not shown her representation to have been deficient.

D.      Counsel failed adequately to address the fine issue.

As worded in the motion, Defendant appears only to attack trial counsel's failure to more vehemently argue against the imposition of the $5,000 fine. Doc. 66 at 6. In his reply, however, Defendant attacks the Court's failure to make a factual finding regarding his ability to pay the fine and argues that if trial counsel had "properly argued that this fine would have put a heavy burden on [Defendant] the difference of the outcome could have been different." Doc. 75 at 15. He also attacks appellate counsel's failure to argue (1) that the fine "would have put a heavy burden on the [him] due to the fact [Defendant] had already been court order[ed] to pay child

support," and (2) that the Court failed to make a factual finding as to Defendant's ability to pay the fine. *Id.*

While circumstances may have changed since Defendant's imprisonment, these were the facts as trial counsel knew them at the time of sentencing: The PSR reported that Defendant had no assets and no income, an outstanding student loan debt, and a debt that had been placed in collection, and he had not filed an income tax return for the past five years. PSR at 22. The PSR also indicated that Defendant had a child with whom he had no contact, and although there was a child support case pending in state court against Defendant regarding this child, he had not been ordered to pay child support. *Id.* at 20. He also knew that the probation officer had concluded that "it appears unlikely that the defendant has the financial ability to pay a Court-imposed fine." PSR at 23. Thus, when counsel appeared for sentencing, he had no reason to believe that the Court would actually impose a fine. When the Court indicated that it intended to impose a fine at the lowest end of the Guidelines, counsel objected based on Defendant's inability to pay. Doc. 53 at 11.

This was an appropriate objection, and for the Court to hold that counsel should have further argued against the fine would require it to judge counsel's performance in light of hindsight, instead of the circumstances as they existed at that time as required by *Strickland*. The Guidelines required the imposition of a fine unless Defendant could establish that he was unable to pay and not likely to become able to pay the fine. U.S.S.G. at § 5E1.2(a). As the probation officer pointed out to the Court and as reflected in the PSR, Defendant had been sporadically employed at his father's barbershop as a stylist/barber with a monthly income of $800-$1,000,

and had previously been employed with another salon as a stylist/barber at $6.00 per hour plus tips.  PSR at 22; Doc. 53 at 12.  Therefore, it is unlikely that the Court would have changed its decision even if counsel had argued further, since it appears that, although Defendant cannot return to his father's barbershop, he certainly possesses skills which will allow him to earn sufficient income to pay all or part of the fine with the "use of a reasonable installment schedule."  U.S.S.G. § 5E1.2(e).

The Eleventh Circuit does not require the Court to make factual findings with regard to a defendant's ability to pay a fine if the record reflects the Court's consideration of the pertinent Guidelines factors prior to imposing sentence.  *United States v. Hernandez*, 160 F.3d 661, 665-66 (11th Cir. 1998).  When the Court imposes a fine over Defendant's objections, the Court's decision is reviewed on appeal for clear error.  *United States v. McGuinness*, 451 F.3d 1302, 1307 (11th Cir. 2006).

Plainly, the Court accepted the determination of the probation officer in the PSR and at the sentencing hearing that Defendant would, after his release, be able to earn sufficient funds to pay the fine.  At the time, Defendant did not have any court-imposed child support payments to make, his father's business was still intact, and he possessed income-generating hairstyling skills.  The Court thus did not commit clear error in assessing the fine and the facts underlying the assessment are plainly visible in the record.  While circumstances have, according to Defendant, changed—he has been ordered to pay child support and his father has sold his business—the Court must, in assessing the effectiveness of both counsel, focus on the circumstances as they existed at sentencing and when the appeal was being prosecuted.  In that

light, neither counsel rendered ineffective assistance.

      E.    Counsel failed to prepare a defense for trial by placing Defendant upon the stand against his wishes and by informing him that this was his only defense.

This claim has been fully considered previously and bears only a few additional comments. At the evidentiary hearing, Defendant acknowledged that counsel investigated the witnesses that were provided to him and that while he could not locate one of them (Defendant did not even know her name), he was able to locate the driver of the automobile with only a first name from which to work. Such diligence hardly shows a lack of preparation or investigation, and Defendant did not dispute–and indeed, he concurred with--counsel's estimation that this witness would not be helpful to his defense. Without any helpful witnesses, Defendant had no alternative but to testify if he wanted any other version of the story besides the Government's to be presented to the jury. In short, this claim is patently meritless.

      F.    Counsel failed to object during sentencing to the Court's failure to make a factual determination as to the enhancement for a stolen firearm.

At sentencing, Defendant was assessed a two-point enhancement for a stolen firearm after an NCIC/FCIC check revealed that one of the guns had been stolen in Polk County, Florida. PSR at 4 & 17. Presently, Defendant charges that counsel was ineffective for failing to object to the enhancement based on *Blakely*, arguing that because "the jury did not find [him] guilty of this crime, nor did [he] ever admit that he knew the firearm was stolen, therefore this enhancement cannot and should not stand." Doc. 75 at 25. Defendant does not argue that the NCIC/FCIC check was erroneous and that the firearm was not stolen. He argues only that the issue of whether the gun was stolen should have been charged in the Indictment and presented to

and determined by the jury.

To the extent that Defendant is asserting *Blakely/Booker* error, the argument is not well taken, as neither applies to matters on collateral review. *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005).[5]  Further, whether Defendant knew the firearm was stolen is irrelevant under the Guidelines, as the enhancement under § 2K2.1(b)(4) applies whether or not he knew or had reason to know the firearm was stolen.  U.S.S.G. Manual at § 2K2.1, cmt. n.19.

Counsel is not required to lodge meritless objections to a presentence report, and since Defendant has no proof that the firearm was not in fact stolen, he cannot show that Mr. Clarke acted deficiently in failing to object to this enhancement.  This claim of ineffectiveness therefore fails.

**CONCLUSION**

Having carefully considered the matter, the Court finds that Defendant has failed to prove that either trial or appellate counsel rendered ineffective assistance in representing him. Therefore, the Court respectfully **RECOMMENDS** that the motion to vacate, Doc. 66, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this   11th    day of July, 2007.


s/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

---

[5]This conclusion applies equally to any other *Blakely/Booker* error which Defendant may have raised in his supplemental memoranda.

*Case No: 4:02cr00043SPM-AK*

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

*Case No: 4:02cr00043SPM-AK*